NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISABEL MELENDEZ and ROBERT MELENDEZ,<br><br>Plaintiffs,<br>v.<br><br>TARGET CORPORATION, JOHN DOES 1–10, JANE DOES 1–10, ABC CORPS. 1–10,<br><br>Defendants. | Case No. 2:18-CV-09405-SRC-CLW<br><br><br>OPINION |

**CHESLER**, District Judge

This matter comes before the Court on the motion for summary judgment filed by Plaintiffs Isabel Melendez and Robert Melendez (the "Plaintiffs"),[1] pursuant to Federal Rule of Civil Procedure 56. Defendant Target Corporation ("Defendant" or "Target") opposes the motion and cross-moves for summary judgment. The Court has reviewed the papers submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, both Plaintiffs' and Defendant's respective motions for summary judgment will be denied.

**I. BACKGROUND**[2]

This action arises from a slip-and-fall accident that Melendez experienced at a Target store in Fairfield, New Jersey on August 19, 2016. According to Melendez, as a result of her fall she

---

[1] Unless otherwise specified, references to "Melendez" in this Opinion concern Isabel Melendez.

[2] The Court will consider those facts which are undisputed as set forth in Plaintiffs' Statement of Undisputed Material Facts In Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' SMF"), Defendant's Responsive Statement of Material Facts in Opposition to Plaintiffs' Motion

1

suffered various injuries to her spine. On March 19, 2018, Plaintiffs filed a Complaint against Target asserting four counts sounding in negligence.

**A. The Incident**

On the day of the incident, Melendez was scheduled to work at 8:00 A.M. at non-party Prism Billing (Defendant's SMF Supplement ¶¶ 1, 2.) Melendez intended to make a "quick run" to Target and did not advise her supervisor that she would be running late. (Defendant's SMF Supplement ¶¶ 5, 7.) Melendez entered the store shortly after it opened at 8:00 A.M, browsed several aisles near the front of the store, and proceeded to the back of the store. (Plaintiffs' SMF ¶ 4; Defendant's SMF Supplement ¶ 8.) Other guests entered the store before her. (Defendant's SMF Supplement ¶ 17; Defendant's SMF Response ¶ 26.) At some time between 8:01 and 8:05[3], and while browsing for snacks in the main aisle, Melendez slipped and fell (Plaintiffs' SMF ¶ 7; Defendant's SMF Supplement ¶ 19), the cause of which is a central contention in the action.

---

for Partial Summary Judgment ("Defendant's SMF Response"), Defendant's Supplemental Statement of Disputed Material Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Defendant's SMF Supplement"), Plaintiffs' Statement of Undisputed Material Facts In Response to Defendant's "Statement of Disputed Material Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment, and Defendant's Statement of Undisputed Material Facts in Support of Defendant's Cross-Motion ("Defendant's Cross-Motion SMF"). Plaintiffs did not file a response to Defendant's Cross-Motion SMF and the Court will consider the facts set forth in Defendant's Cross-Motion SMF to be undisputed to the extent that they are not in conflict with the Rule 56.1 materials which Plaintiffs have submitted. L. R. 56.1(a); *see Liberty Bell Bank v. Rogers*, 726 Fed. App'x 147, 150-51 (3d Cir. 2018).

[3] None of the video surveillance footage submitted to the Court in furtherance of the instant motions captures the slip-and-fall incident. While Plaintiffs insinuate that Defendant has spoliated evidence, that issue is not before the Court and the Court relies only on the evidence before it.

The video evidence before the Court shows the area near the entrance to the store on August 19, 2016 from 7:30 A.M. to 8:05 A.M. Melendez can be seen entering the store shortly after the store opened at 8:00 A.M., browsing several aisles near the checkout area, and then proceeding down the main aisle, exiting the scope surveillance video in the direction of the accident at 8:01 A.M. Shortly before 8:05 A.M. Melendez is seen returning from the direction which she left. The accident occurred at some time in the interval between these two points.

2

According to Melendez, after she fell, she "felt . . . something wet" in her hand, saw water on the ground, and had water on her jeans. (Plaintiffs' SMF ¶ 8.) Melendez also testified that, after she fell and while still on the ground, several target employees approached her. (Plaintiffs' SMF ¶ 8.) According to Melendez, when she asked the employees whether she was bleeding, one employee responded: "No, I believe it's just wet." (Plaintiffs' SMF ¶ 8.)

Alejandra Romani, one of the Target employees who responded to the slip-and-fall, was in an aisle off of the main aisle at the time of the incident. (Defendant's SMF Supplement ¶¶ 8, 13.) She testified:

> We opened the doors so customers could come in because we called and we said everything was clear, so they opened the doors, so people come in. I'm in the market section labeling just about in the middle of the -- the aisle. I hear people go by. Something caught my attention. Someone was walking too fast, you know, the noise from their shoes, so that caught my attention and when I turned I saw a woman pass . . . .
>
> . . .
>
> I continued working and then I hear the sounds of her shoes. That's what caught my attention and then all of a sudden, that stopped and then I heard the sound from the lady or the ow or something like that and so I had to approach her to see what happened.

(Defendant's SMF Supplement ¶¶ 9, 11.) Upon hearing Melendez's fall, Romani proceeded to the main aisle, saw Melendez on the floor, and went to assist her. (Defendant's SMF Supplement ¶ 13.) According to Romani, Melendez had "one leg outstretched and the other was behind her." (Defendant's SMF Supplement ¶ 6.) Romani told Melendez to "remain here" and that she "was going to call someone to come help you." (Defendant's SMF Supplement ¶ 6.) Romani testified that she called the Target Leader on Duty ("LOD"), Alex Thompson, over the walkie-talkie "to come over to [aisle] F-25 where the cereal was because there was an incident." (Defendant's SMF Supplement ¶ 5.) Romani testified that she did not see any water on the floor, and that she touched the floor where Melendez fell and it was dry. (Defendant's SMF Supplement ¶ 21.) Romani also

3

testified that the sandals which Melendez was wearing at the time of the incident were not wet. (Defendant's SMF Supplement ¶¶ 14, 22.)

Sarah Sisco, another Target employee who responded to Melendez's fall shortly after being notified over walkie talkie of the incident, testified that she: (i) did not recall Melendez saying the floor was wet; (ii) did not recall Thompson commenting that the floor was wet; and (iii) did not say the floor was wet. (Defendant's SMF Response ¶ 8; Defendant's SMF Supplement ¶ 9.) Sisco further testified that Romani did not say that the floor was wet. (Defendant's SMF Response ¶ 8; Defendant's SMF Supplement ¶ 9.)

### B. The Guest Incident and LOD Investigation Reports

Immediately following the incident, LOD Thompson met with Melendez and interviewed her consistent with Target's "Managing Guest Incidents" procedures. (Plaintiffs' SMF ¶ 10.) In connection with those procedures, Thompson prepared two documents: (i) a Guest Incident Report, which he prepared with Melendez; and (ii) an LOD Investigation Report. (Plaintiffs' SMF ¶ 11.) In the Guest Incident Report, Melendez reported that the cause of the incident was "a wetness about one to three drops." (Plaintiffs' SMF ¶ 11.) In a section asking whether the floor was "clean and dry," Melendez indicated that it was not and reported that "[t]here were small water (it was clear) droplets." (Plaintiffs' SMF ¶ 11.) Melendez indicated on the form that her clothes were not "wet or damaged." (Plaintiffs' SMF ¶ 11.) Melendez signed the Guest Incident Report after the report was completed. (Defendant's Cross-Motion SMF ¶ 16.)

In the LOD Investigation Report, Thompson indicated "no" in response to the question "[w]as the floor/ground clean and dry at the time of the incident." (Plaintiffs' SMF ¶ 12.) In response to a follow-up question asking him to "describe the condition of the floor/ground at time

4

of incident," Thompson appears to have answered "visually verified."[4] (Plaintiffs' SMF ¶ 12.) Notwithstanding the contents of the LOD Investigation Report, Thompson testified that he did not observe any water or liquid on the floor when he arrived at the scene and that he filled out the LOD Investigation Report incorrectly. (Plaintiffs' SMF ¶ 14.)

### C.  Pre-Opening Cleaning

Video surveillance of the store shows the main aisle being cleaned with a blue floor cleaning machine at or around 7:38 A.M. (Plaintiffs' SMF ¶ 22.) Surveillance also shows a "Caution-Wet Floor" sign in the store's main aisle (though not located at the spot of the slip-and-fall), which remained in place until at or around 8:05 A.M.—after the slip-and-fall incident. (Plaintiffs' SMF ¶ 22.) No customers were within the store prior to the store's 8:00 opening. (Plaintiffs' SMF ¶ 22.)

Numerous Target employees testified that they did not observe any water at or around the site of Melendez's slip-and-fall on the morning of the incident:

- *Sarah Sisco*. Sisco testified that from 7:00 A.M. to 8:00 A.M. before the store opened on the day of the incident, she walked the market area, including the main/green aisle several times, making observations as to whether the floor was safe to open for guests, and looking for spills or anything else on the floor. (Defendant's Cross-Motion SMF ¶ 29.) Video evidence establishes that Sisco walked down the main aisle at or around 7:43 A.M. (Plaintiffs' Ex. E; *see also* Defendant's SMF Response ¶ 18.) Sisco testified that when she walked the green aisle, she made observations for anything that was on the floor, and there were no spills. (Defendant's Cross-Motion SMF ¶ 32.) When asked whether any steps were taken regarding Target's spill cleanup procedures, Sisco testified that "There were no spills that day, I would have reported it to an LOD." (Defendant's SMF Response ¶ 18.)

---

[4]  Thompson entered "visually verified" in response to the prompt: "If Yes [*i.e.*, the floor/ground was clean and dry at the time of the incident], how was it verified?" (Plaintiffs' SMF ¶ 12.) An arrow on the form appears to indicate that this response was meant for the prompt: "If No [*i.e.* the floor/ground was not clean and dry at the time of the incident], describe the condition of the floor/ground at time of incident." (Plaintiffs' SMF ¶ 12.)

5

- *Alejandra Romani*. Romani testified that she walked the area around where the fall occurred 5 minutes prior to the store opening. She observed that the area was dry and testified that she did not see anyone cleaning the floors from the cleaning company in the area from 7:55 until the incident. (Defendant's SMF Response ¶ 18.)

- *Alexander Thompson*. Thompson testified that he conducted a morning walk through the store prior to the 8:00 A.M. opening, including near the site of the incident, and that he did not observe any spills or hazardous conditions. (Defendant's Cross-Motion SMF ¶ 25.)

- *John Dix*. Dix, another Target employee present at the store the day of the incident, testified that as part of his morning routine, prior to the store opening he walked the entire sales floor, including the main aisle, to make sure the floor was in good condition and would address any issues. (Defendant's Cross-Motion SMF ¶ 26.)

Numerous deponents testified that they had never or only rarely observed the floor cleaning machine leaving water on the floor while in use. (*See* Defendant's SMF Response ¶¶ 18; 20.) However, Thompson testified that he has witnessed instances where the cleaning machine leaves a "residue" on the ground:

> Q. Did you ever see that machine being used?
>
> A. Yes.
>
> Q. All right. And did you ever observe – in the use of that machine did you ever see any residue or any water or liquid resulting from that machine being used?
>
> A. Yes.
>
> Q. And can you tell me how you observed that, what did you see?
>
> A. Just like a clear substance, a residue. So there would be a dry part of the floor and then a part of the floor that looked a little moist.

(Plaintiffs' SMF ¶ 18.) No witness observed any residue from the cleaning machine on the day of the incident.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) sets the standard the Court must apply to the motion for summary judgment. Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). It is well-established that a factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and material if, under the substantive law, the dispute would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). It may not make credibility determinations or engage in any weighing of the evidence. *Anderson*, 477 U.S. at 255; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Once the moving party has satisfied its initial burden, the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). To create a genuine issue of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001), *overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs*, 134 S. Ct. 773 (2014). The party opposing a motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also*

*Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment"). If the non-movant fails to "properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### B. Defendant's Objections to Evidence Proffered by Plaintiffs in Support of Their Motion

As a threshold matter, Defendant contends that much of the evidence which Plaintiffs have submitted in support of their motion does not constitute proper support on a motion for summary judgment and thus should be disregarded. Without evaluating every citation contested by Defendant, the Court considers its objections in broad strokes.

*First*, Defendant challenges three unsworn expert reports, submitted by Plaintiffs, as inadmissible evidence and, thus, unavailable to support Plaintiffs' motion. Rule 56(c)(4) states that, when supporting a factual position for summary judgment's purposes' an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Unsworn expert reports, as the Court has consistently concluded, are inadmissible hearsay. *Fowle v. C & C Cola,* 868 F.2d 59, 67 (3d Cir. 1989) ("The substance of this report was not sworn to by the alleged expert. Therefore, the purported expert's report is not competent to be considered on a motion for summary judgment."). Still, at the summary judgment stage, parties need not present evidence in admissible form, so long as it can show that the evidence can be admitted at trial. *See* Fed. R. Civ. P. 56(c)(2). The Court

8

is satisfied that Plaintiffs have cured any potential deficiency by submitting sworn declarations for the previously unsworn reports.[5]

*Second*, Defendant contests that the affidavit of Plaintiffs' attorney cannot be relied on for assertions of fact in a motion for summary judgment. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *See* Fed. R. Evid. 602. Plaintiffs agree that the affidavit is inadmissible and represent that it was provided to the Court for context with respect to various exhibits. The Court does not here rely on any factual assertions made within the affidavits of counsel.

*Third*, Defendant asserts that any "interpretation of events in surveillance video" is an issue of fact left to the determination of the jury. (Defendant's Mot. at 8.) To the extent Defendant contends that the Court is unable to consider the surveillance video in connection with the instant motions, Defendant is plainly incorrect. *See Scott v. Harris*, 550 U.S. 372 (2007) (approving of a district court's consideration of video evidence at the summary judgment phase). To the extent, instead, that this objection goes to any of the experts' interpretations of matters squarely within the factfinder's exercise of common sense, the Court agrees that the video speaks for itself. *E.g. Munoz v. Menard, Inc.*, 2019 WL 2994519, at *3 (N.D. Ill. July 9, 2019) (holding that a witness' testimony is not needed to explain to the jury what the surveillance footage depicts)

*Fourth*, Defendant objects to facts which Plaintiffs assert without specific reference to the record, and notably identifies Exhibit B to Plaintiffs' Statement of Material Facts. Exhibit B—

---

[5] Even if a party initially submits an unsworn affidavit or declaration to substantiate a claim under Rule 56, if a party attaches an unsworn expert report along with an expert's sworn declaration or deposition affirming the report, the unsworn report's deficiencies may be cured. *See, e.g.*, Wright & Miller, Affidavits in Support of or in Opposition to Summary Judgment, 10B Fed. Prac. & Proc. Civ., § 2738 (4th ed. July, 2020) ("Subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment.").

9

which appears to be a document created by Plaintiffs by adding arrows and other markings to a copy of a store map and which casually cites to the 191-page deposition transcript of Jared Marcus to support those markings—is otherwise inadmissible and the Court disregards it in connection with the instant motion.[6]

### C. The Parties' Motions for Summary Judgment

Plaintiffs move for judgment as a matter of law establishing that: (1) Target is liable for the slip-and-fall, and any resulting damages; (2) the accident caused by Target's negligence is the sole proximate cause of Melendez's injuries; and (3) Melendez's injuries caused by Target's negligence are permanent in nature. Defendant cross-moves for summary judgment as a matter of law on the ground that Plaintiffs cannot meet their burden of proving Defendant was on notice of the dangerous condition.

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" *Townsend v. Pierre,* 110 A.3d 52, 61 (N.J. 2015) (quoting *Polzo v. Cty. of Essex,* 960 A.2d 375, 384 (N.J. 2008)). Each element of plaintiffs' claim must be established by a preponderance of the evidence. *Jones v. Morey's Pier, Inc.*, 165 A.3d 769, 783 (N.J. 2017). The mere showing of an incident causing injury sued upon is not alone sufficient to authorize the finding of an incident of negligence. *Long v. Landy*, 171 A.2d 1, 6 (N.J. 1961).

---

[6] Defendant also objects to new assertions of facts in Plaintiffs' brief which are not otherwise found within their statement of material undisputed facts. The Court agrees and does not rely on any such assertions in this Opinion.

1. <u>Disputes of material facts exist as to whether Defendant breached a duty to Plaintiffs.</u>[7]

According to Plaintiffs, it is a foregone conclusion that Target breached its duty of care by failing to "keep [its] floors clean, dry and unobstructed." (Plaintiffs' Mot. at 8.) But the very premise underlying this conclusion—that the floor of the main aisle was wet—is in dispute. The available evidence is more than sufficient for a reasonable jury to conclude that a dangerous condition did not exist, a conclusion which would doom Plaintiffs' claims for relief.

The testimony of no less than three witnesses creates a dispute as to whether the main aisle was wet. Romani testified that she did not see any water on the floor and touched the floor where Melendez fell and, when she felt the floor, it was dry. (Defendant's SMF Supplement ¶ 21.) She further testified Melendez's shoes were not wet after the incident. (Defendant's SMF Supplement ¶ 22.) Sisco testified that she: (i) did not recall Melendez saying the floor was wet; (ii) did not recall Thompson commenting that the floor was wet; (iii) did not say the floor was wet; and (iv) Romani did not say that the floor was wet. (Defendant's SMF Response ¶ 8; Defendant's SMF Supplement ¶ 9.) Furthermore, Thompson testified that he did not see any liquid on the floor when he arrived as Melendez was being helped. (Defendant's SMF Supplement ¶ 12, 24.)

In an attempt to salvage their contention that no true material disputes exist, Plaintiffs claim that the Target employees' testimony amounts to mere "waffling" which is contrary to contemporaneous documentary evidence and fails to establish anything other than "some metaphysical doubt as to material facts." (Reply at 22-23 (citing *Matsushita Electric Indus. Co.*

---

[7] Defendant does not contest that Target owed Melendez, a customer at its store, a duty of reasonable care to guard against dangerous conditions on the property. *See Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993) ("A business owner owes a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner knows about or should have discovered.").

11

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).)  In reality, however, Plaintiffs quibble with the characterization of the evidence against them and ask the Court to make credibility determinations at a phase where it is flatly prohibited.  *Reyes v. DiLuzio*, 495 F. App'x 219, 223 (3d Cir. 2012) ("[T]he District Court's role on summary judgment is not to determine credibility.").  For example, Plaintiffs contend that Romani's testimony demonstrates that she did not look or touch "where Mrs. Melendez actually fell" and instead the testimony demonstrates that Romani merely felt the ground somewhere in the area of the incident  (Reply at 20.)  Certainly, however, this evidence tends to establish that water was not present at the location of Melendez's fall.  And Plaintiffs effectively ask the Court to discredit Thompson's sworn testimony because it is contradicted by the contemporaneous findings described in the LOD Report.  Whether to entertain this conclusion clearly falls within the realm of a credibility determination reserved for a factfinder.

Plaintiffs goes so far as to posit that the deponents' mere failure to identify water on the floor near the incident is insufficient to defeat summary judgment because "not seeing something does not amount to a genuine dispute."  (Reply at 21.)  That is plainly untenable where, as here, the dispute concerns whether or not water was actually on the floor.  Collectively, the facts as set forth in the Parties' papers "create a genuine dispute of material facts and implicate credibility issues that are not appropriate for this Court to decide on a motion for summary judgment." *Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 357 F. Supp. 2d 788, 801 (D.N.J. 2005). Plaintiffs' motion for partial summary judgment establishing that Target is liable for the subject accident is denied.[8]

---

[8] Because a central premise of Plaintiffs' suit—that a dangerous condition existed at Target's store—is in dispute, the Court declines to consider whether any breach of duty was a proximate cause of Melendez's injuries or whether those injuries are permanent in nature.

2. <u>The Parties' motions as they pertain to whether notice is required for liability.</u>

Assuming that Plaintiffs are able to establish that a dangerous condition existed, Plaintiffs contend that they will succeed in their claims even if Target was not on notice of the condition and, in the alternative, that Target was on constructive notice of the condition. Target, for its part, argues both that notice is a prerequisite to Plaintiffs' success on their claims and that Plaintiffs cannot establish Target was on notice.

"Generally, a proprietor's duty to his invitee is one of due care under all the circumstances." *Bozza v. Vornado, Inc.*, 200 A.2d 777, 779 (N.J. 1964). Ordinarily, an invitee seeking to hold a business proprietor liable in negligence "must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N. J. 2003) (citing *Brown v. Racquet Club of Bricktown* 471 A.2d 25 (N.J. 1984)); *see also Arroyo v. Durling Realty, LLC*, 78 A.3d 584, 586 (N.J. Super. Ct. App. Div. 2013) (stating that "[t]he absence of [actual or constructive] notice is fatal to plaintiff's claims of premises liability," and that "[t]he mere existence of an alleged dangerous condition is not constructive notice of it" (internal quotation marks and citation omitted)). While a business owes a duty of ordinary care to its invitees, it " is not an insurer for the safety of its patrons." *Znoski v. Shop-Rite Supermarkets, Inc.*, 300 A.2d 164, 166 (N.J. Super. Ct. App. Div. 1973).

"An inference [of negligence] can be drawn only from proved facts, and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." *Prioleau v. Kentucky Fried Chicken, Inc.,* 85 A.3d 1015, 1022 (N.J. Super. Ct. App. Div. 2014), *aff'd as modified and remanded,* 122 A.3d 328 (N.J. 2015) (citing *Long*, 171 A.2d at 6). "The mere showing of an incident . . . is not alone sufficient to authorize the finding of an incident of negligence." *Long*, 171 A.2d at 6.

13

    a. Plaintiffs' request for a ruling that Target need not be on notice of the dangerous condition is unwarranted.

New Jersey recognizes certain limited exceptions to the general rule that notice is required to establish a premises liability claim.[9] Plaintiffs urge the Court to adopt a narrow line of cases standing for the proposition that where a defendant "create[s] the [dangerous] condition by his own act," defendant need not be on notice of the condition in order to be held liable. *Gill v. Krassner*, 77 A.2d 462, 464–65 (N.J. Super. Ct. App. Div. 1950).

Plaintiffs rely heavily on case law evaluating negligence claims arising from patrons who slipped on floors that the patrons alleged the proprietors had excessively oiled and waxed. In *Bosze v. Metro. Life Ins. Co.*, 61 A.2d 499, 500 (N.J. 1948), the New Jersey Supreme Court held that "negligence may be inferred from the fact of oiling or waxing a floor," if it appears that "either in the nature or quantity of the substance used, or in the manner or time of its application, there was a departure from the normal or generally accepted standards so as to create a hazard of a tortious character for the users of the premises." Meanwhile, the court in *Gill* found that notice was not required where the proofs adduced at trial, which included the testimony of multiple deponents affirming the unusually heavy application of wax on the floor, were sufficient for a jury to conclude that waxing had been done in an improper and negligent manner. *Gill*, 77 A.2d at 464–65.

Plaintiffs also highlight *Plaga v. Foltis*, 211 A.2d 391 (N.J. Super. Ct. App. Div. 1965), concerning a slip-and-fall at a restaurant where the plaintiff slipped on a piece of fat on the floor,

---

[9] Notable among these exceptions is the mode-of-operation doctrine, which "is a special application of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model." *Prioleau*, 122 A.3d at 338. While the rule is discussed and occasionally relied on within many of the authorities to which the Parties cite, the Parties agree that it is not applicable here.

14

no customer had been served food in the vicinity within an hour and a half prior to the fall, and a busboy traversed the area with a cart of dirty dishes on multiple occasions during that time. The court there found that notice was not required where "the proofs established as a matter of reasonable probability that the presence of [the dangerous condition] was attributable to employee activity." *Id.* at 393; *see also id.* at 394 ("[A] jury might find that it was more probable that the substance was on the floor because of the negligence of the employee than that it had been deposited by a customer" and such a conclusion was not "based upon . . . sheer speculation.").

In these authorities, it was largely uncontested that the defendants or their agents had created the dangerous conditions which led to the accidents there-in-question. Here, both the existence *and source* of the water droplets are in dispute, and it is not self-evident that the source of the dangerous condition—if one exists—can be attributable only to Target. Video evidence establishes that numerous customers entered the store before Melendez, each of whom could have created the dangerous condition. And while Plaintiffs assert that the available video evidence "shows no customers with liquids in their hands" (Plaintiffs' Reply at 8), Melendez claims to have slipped on "one to three drops" of water. The video evidence is insufficient to dismiss the conclusion that a customer created the dangerous condition.

Particularly in light of the evidence that no Target employee identified water on the floor prior to the store's opening, the Court cannot conclude that the evidence establishes as "a matter of reasonable probability" that Defendant created the wetness described in the Guest Incident Report.[10]

---

10   Furthermore, at this stage of the litigation the Court cannot, as a matter of law, conclude that the blue cleaning machine "created the reasonable probability that a dangerous condition would occur and [Target] knew of its condition." *Ruiz v. Toys R Us, Inc.*, 636 A.2d 117, 121 (N.J. Super. Ct. App. Div. 1994) (finding notice of the specific puddle unnecessary where plaintiff slipped on the puddle, defendant knew that its roof was defective and leaky, and defendant knew or should have known that the roof would "probably continue to leak when it rained"). Here, witness testimony is

15

Accordingly, Plaintiffs' request for an order establishing that notice is not required will be denied.

>   b.  Questions of material fact preclude a finding of summary judgment in Defendant's favor.

On the flip side of the coin, there are disputes of material facts which, when resolved in Plaintiffs' favor, allow for a rational factfinder to conclude that the existence of the water was attributable to employee activity. If a factfinder found as much, notice would not be required. *Prioleau*, 122 A.3d at 339 (acknowledging that "evidence might support a finding that a plaintiff need not show actual or constructive notice because the condition was created by defendant or its employees.").

Here, Target plainly exercised control over the area of the incident prior to the store opening, and during that time Target or its agents cleaned the floor using a floor cleaning machine. The floor cleaning machine was captured heading towards the area where Plaintiff slipped no more than 25 minutes prior to the time of the accident and multiple deponents had, on prior occasions, witnessed cleaning machines, like the one in use on August 19, 2022, leaving a wet residue on the floor. Furthermore, evidence establishes that there was a "spill cone" located on the main aisle on the day of the incident. When construing all inferences in Plaintiffs' favor these facts are sufficient to defeat Defendant's motion because the proofs adduced at trial may demonstrate that notice is not required in this case.

---

more than sufficient for a jury to find that it was not reasonably probable that the cleaning machine would create a hazard.

16

      c. Plaintiffs are unable to establish Defendants had constructive notice of any defect.[11]

While the facts do not establish that Target's notice of the dangerous condition is required as a matter of law, the Court is satisfied that, if it is in fact required based on the evidence—i.e., the factfinder concludes that a customer created the "wetness"—Plaintiffs are unable to meet their burden of showing Target was on notice of the defect.

Constructive notice is usually a question of fact for the jury, *e.g., Betancourt v. Home Depot U.S.A., Inc.*, 2018 WL 3954854, at *5 (D.N.J. Aug. 16, 2018), but may be appropriate for summary judgment when no reasonable juror could conclude otherwise, *e.g., Troupe v Burlington Coat Factory Warehouse Corp.,* 129 A.3d 1111, 1116 (N.J. Super. Ct. App. Div. 2016). Constructive knowledge exists if the condition existed for such a length of time that the business operator should have known of its presence. *Troupe*, 129 A.3d at 1116; *Teixeira v. Walmart Stores, Inc.*, 2021 WL 4272828, at *4 (D.N.J. Sept. 16, 2021). While the length of time that a hazard was present is a key factor in whether Defendant had constructive notice of the defect, the constructive notice inquiry "also depends on the characteristics of and surrounding the dangerous condition." *Yazujian v. PetSmart*, 2016 WL 4408817, at *8 (D.N.J. Aug. 16, 2016).

Courts, when considering these factors, have permitted a wide range of times for jury consideration, though "courts have often used 45 minutes as a benchmark." *See Garcia v. Walmart, Inc.*, 2021 WL 754006, at *5 (D.N.J. Feb. 26, 2021)(citing *McCracken v. Target Corp.*, 2011 WL 1466075, at *3 (D.N.J. Apr. 18, 2011)). Still, intervals of less than 45 minutes have sufficed to create a jury question. *See, e.g., id.* (denying summary judgment where 20 minutes elapsed between a spill and plaintiff's fall)*, Yazujian*, 2016 WL 4408817, at *8 (same); *but see Goldsack v. Wal-Mart Stores, Inc.*, 2018 WL 4300124, at *2 (D.N.J. Sept. 6, 2018), *aff'd sub*

---

[11]     Plaintiffs do not contend that Target had actual notice of the purported defect.

17

*nom*. *Goldsack v. Walmart Stores, Inc.*, 800 F. App'x 95 (3d Cir. 2020) (granting motion for summary judgment where plaintiff approached a customer service counter and, upon completing her transaction, walked back in the direction she came from, and slipped and fell on a puddle of water).

The Court is aware of two cases in which other courts have permitted constructive notice theories proceed notwithstanding exceptionally short intervals between a spilled substance and a plaintiff's fall. In *McCracken*, the court denied defendant's motion for summary judgment where plaintiff slipped on a spilled substance in the area near the store's checkout lanes and immediately adjacent to a primary entrance to the store. 2011 WL 1466075, at *3. In denying the motion, the court reasoned that a jury could find that defendant "should have monitored the floor to ensure that it was clear of hazards on a minute-by-minute basis" because "frequent spills are particularly likely in this area because of the constant traffic, bottlenecking of customers, and the likelihood that customers would stop at the shopping carts and baskets and unload personal items or merchandise into the carriers." *Id*. Meanwhile, in *Romeo v. Harrah's Atlantic City Propco, LLC*, 168 F.Supp.3d 726 (D.N.J. 2016), the court held that a span of four minutes between a spill and the plaintiff's fall was sufficient to submit to a jury the question of whether defendant had constructive notice of the spill. In so holding, the court noted that four minute "standing alone," was not enough to give defendant constructive notice, but that this period, coupled with defendant's video surveillance of the area and an employee's "lingering" presence "in the area during the existence of a spill" created a genuine issue of material fact as to whether defendant had constructive notice. *Id.* at 732.

Here, video evidence establishes that Melendez' fall must have occurred at some time between 8:01 and 8:05. Construing the evidence in the light most favorably to Plaintiffs, five minutes elapsed between the time other customers entered the store and the time of Melendez's

18

slip-and-fall. Considering the facts holistically, no reasonable jury could conclude that five minutes is a sufficient length of time that the business operator should have been aware of several water droplets on the floor. Notwithstanding that the main aisle may act as a "high traffic area," it is a far cry from the location of the fall in *McCracken*: The fall at issue here occurred away from the store's entrance and there is no evidence that patrons either congregate in the area or that the area is prone to spills. *McCracken*, 2011 WL 1466075, at *3; *cf. e.g.*, *Garcia,* 2021 WL 754006, at *5 (accident in shampoo area posed higher risks because the products include slippery liquids). Nor is this a situation where, as in *Romeo*, the evidence establishes that an employee was "lingering" in the area of the fall. 168 F. Supp. 3d at 732. To find otherwise is to effectively and impermissibly make Target an insurer of its patrons. *Cf. Znoski v. Shop-Rite Supermarkets, Inc.*, 300 A.2d 164, 166 (N.J. Super. Ct. App. Div. 1973).

Accordingly, if the evidence at trial demonstrates that a customer created the spill at a time subsequent to the store's opening, Plaintiffs will be unable to establish that Target was on constructive notice of the defect.

## III. CONCLUSION

For the reasons discussed, the Parties' respective motions for summary judgment will be denied. An appropriate Order will be filed.

/s/ Stanley R. Chesler<br>
STANLEY R. CHESLER<br>
United States District Judge

Dated: May 23, 2022